**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

FLORENCIO SANDOVAL, JR.,

        Plaintiff,

v.                                       No. 1:21-cv-00471-JHR

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

        Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court is Plaintiff Florencio Sandoval, Jr.'s Motion to Reverse and/or Remand the Commissioner of Social Security's final decision. [Doc. 26]. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties consented to United States Magistrate Judge Jerry H. Ritter resolving Sandoval's challenge to the Commissioner's Final Decision on his application for Social Security benefits and entering Final Judgment in this appeal. [Docs. 30–33].[1] Having reviewed the parties' briefing and the Administrative Record, the Court grants Sandoval's motion, reverses the Commissioner's Final Decision denying benefits, and remands this case to the agency for rehearing.

## I.    <u>INTRODUCTION</u>

Administrative Law Judges ("ALJs") deciding cases for the Social Security Administration must consider voluminous evidence and make fact findings to determine whether claimants are disabled. These fact findings include deciding which sources of medical information are most credible, what the medical information means for the claimant's ability to work, whether any work exists that the claimant can do, and whether that work exists in

---

[1] Documents 3–5, 10, 11, and 30–33 are text-only docket entries viewable on the CM/ECF system.

"significant numbers" in the regional or national economy.  Each finding must be supported by a modicum of evidence and reason, and if they are properly made, they are deemed conclusive facts.

Sandoval challenges many of the fact findings made and the manner in which the ALJ below made them.  One of his challenges succeeds.  Sandoval is mostly incorrect:  the ALJ below properly considered the medical evidence presented and sources from which it issued, and the ALJ properly found that there is some work which Sandoval can do.  The ALJ's findings on these points were supported by clear reasoning and substantial evidence.  However, the ALJ's finding that these jobs existed in "significant numbers" in the national economy was supported by neither reason nor evidence.  Sandoval's case must thus be remanded for clearer fact-finding on this point, something only the Administration may do.

## II.   <u>BACKGROUND AND PROCEDURAL HISTORY</u>

Plaintiff Florencio Sandoval, Jr., protectively applied for disability insurance benefits ("DIB") under Title II of the Social Security Act and supplemental security income ("SSI") under Title XVI of the Act in August 2019, claiming disability beginning January 2017. Administrative Record ("*AR*") at 202–19.[2]  The Administration denied Sandoval's applications initially in January 2020, *AR* at 81–82, and on reconsideration in March the same year.  *AR* at 103–04.  Sandoval persisted and was granted a hearing before ALJ Stephen Gontis.  *AR* at 145–46, 163–67.

Sandoval dealt with medical issues for years leading up to his applications for benefits. Since 2007, he has been treated for chronic disc degeneration and osteoarthritis of his lumbar spine, as well as pain associated with those conditions.  *AR* at 315–16.  From 2007 to 2013,

---

[2] Document 17 comprises the sealed Certified Transcript of the Administrative Record.  The Court cites the Record's internal pagination rather than the CM/ECF document number and page.

Sandoval's treatment regimen also addressed problems with chronic asthma, high blood pressure, bulging discs in the lumbar spine, obesity, and opioid dependence. *AR* at 324–25, 327, 333, 337, 340, 344, 350, 352, 354, 366. His back pain fluctuated between four and eight on a ten-point scale; medical records show he was prescribed oxycodone to control it. *See AR* at 347, 356, 358 (noting subjective pain ratings); 407 (oxycodone prescription). During this time, Sandoval worked as an automotive instructional technician at a community college. *AR* at 38, 237–39.

Sandoval's medical situation worsened in late 2016 when he was rear-ended while driving and sustained a left ankle injury. *AR* at 571–72. Although Sandoval did not seek treatment for his ankle right away, he would ultimately be treated for a talar dome fracture with splinting and physical therapy for over a year and eventual surgery. *AR* at 574–77, 665–68. Throughout the treatment process, Sandoval continued to be prescribed opioids for pain relief. *See AR* at 577. Weeks after he was rear-ended, Sandoval's supervisor terminated his employment. *AR* at 39, 237–39. According to Sandoval, this was because of "differences of opinion" and because his supervisor believed Sandoval moved a trash can improperly. *AR* at 39. Sandoval has not performed any other substantially gainful work since he was terminated. *See AR* at 258.

Dr. Jorge Sedas, M.D., one of Sandoval's long-time treating physicians, opined twice during the application process that Sandoval's physical limits made him unable to work. In August 2019, Dr. Sedas wrote to the Administration that "Sandoval has had ongoing difficulties with non-healing injuries in his foot and ankle" which, in his opinion, "resulted in [Sandoval] being disabled from any gainful employment." *AR* at 742. In September 2020, Dr. Sedas elaborated on his views in a medical source statement. *AR* at 766–70. He opined that

Sandoval's pain would frequently interfere with his attention and concentration while working; that he would not be able to tolerate any emotional stress at work, even in "low stress" jobs; and that Sandoval's impairments make him unable to sit for more than thirty minutes at a time, stand for more than fifteen minutes at a time, or walk more than one city block without rest or severe pain. *AR* at 767–68.  Dr. Sedas also wrote that Sandoval would need periods to lie down during the workday, that he required an assistive device to walk, and that Sandoval can never lift even less than ten pounds in the work environment, nor could he twist, stoop, crouch, climb ladders, or climb stairs. *AR* at 768–69.  In response to the question "Are your patient's impairments likely to produce 'good days' and 'bad days'?" Dr. Sedas checked "No," and wrote in the margin, "they are all 'bad days.'" *AR* at 769.

All other medical sources consulted during the application process agreed that Sandoval's ability to work was impaired but that he had fewer limitations than Dr. Sedas suggested.  Dr. Brittany Coffman, M.D., reviewed Sandoval's medical records and performed a consultative examination in December 2019.  *See AR* at 749–54.  She opined that Sandoval could, with support from an ankle brace, stand and walk for four to six hours during an eight-hour workday despite tenderness and decreased range of motion in his left ankle as well as limits on his ability to use his thoracic and lumbar spine.  *AR* at 754.  She also found that Sandoval could sit for eight hours of the workday; carry and lift twenty pounds frequently; reach, handle, feel, grasp, and finger frequently; and bend, stoop, crouch, or squat occasionally despite spinal and ankle limitations.  *AR* at 754.  Dr. William Fleming, M.D., and Dr. Edward S. Bocian, M.D., reviewed Sandoval's medical records on initial consideration and reconsideration, respectively, and reached similar conclusions.  *See AR* at 87–90, 112–116.

ALJ Gontis held Sandoval's hearing in December 2020.  *AR* at 33.  After hearing testimony from Sandoval and from a vocational expert, as well as statements from Sandoval's attorney, ALJ Gontis denied benefits.  *AR* at 15.  Sandoval sought relief from the Appeals Council, which denied review and made ALJ Gontis's decision final.[3]  *AR* at 1, 8.  Sandoval then timely appealed.  [Doc. 1].  His case was assigned to me, and the parties consented to my presiding.  [Docs. 30–33].  Sandoval moved to reverse the Commissioner's decision in February 2022, the Commissioner responded in opposition in May, and Sandoval replied in June, completing briefing.  [Docs. 26, 34, 35].

## III.   THE COMMISSIONER'S FINAL DECISION

Claimants seeking disability benefits must establish they are unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).[4]  The Administration applies a five-step analysis to determine eligibility for benefits.[5]

At step one of his analysis, ALJ Gontis found that Sandoval met the insured status requirements of the Social Security Act through March 31, 2022, and that he had not engaged in substantial gainful activity since his alleged disability onset date.  *AR* at 20.  At step two, he

---

[3] Claimants who are denied benefits by the Administration must obtain a "final decision" from the Administration before they may appeal the denial to a federal district court.  *See* 42 U.S.C. § 405(g).  Generally, when the Administration's Appeals Council denies review after the ALJ denies benefits, the ALJ's decision is "final" enough for a district court to review.  20 C.F.R. § 422.210(a);  *see also Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003) (finding that the Appeals Council's denial of review made an ALJ's decision to deny benefits "the Commissioner's final decision for purposes of review").

[4] Regulations for determining whether a claimant is disabled for purposes of for both DIB and SSI are identical but nonetheless codified in two separate parts of the Code of Federal Regulations.  Part 404 of Title 20 governs DIB while Part 416 governs SSI.  The Court cites only the applicable regulations in Part 404, but the analogous regulations in Part 416 apply as well.

[5] These steps are summarized in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016).

found that Sandoval had three severe impairments:  degenerative disc disease of the lumbar

spine, degenerative joint disease of the left ankle, and obesity.  *Id.*  ALJ Gontis also found that

Sandoval's opioid dependence was non-severe and thus posed no more "than a minimal

restriction on [Sandoval's] ability to perform basic work activities[.]"  *AR* at 21.  At step three,

ALJ Gontis found that Sandoval's impairments, individually and in combination, did not meet or

medically equal any impairment listed in Appendix 1 to C.F.R. Title 20, Part 404, Subpart P.  *Id.*

When a claimant does not meet a listed impairment, the ALJ must determine the

claimant's residual functional capacity.  20 C.F.R. § 404.1520(e).  Residual functional capacity

is a multidimensional description of the work-related abilities a claimant retains despite his

impairments.  *Id.* at § 404.1545(a)(1).  It "does not represent the *least* and individual can do

despite his or her limitations, but the *most*."  Social Security Ruling ("SSR") 96-8p at *Definition

of RFC*.[6]  ALJ Gontis determined that Sandoval could

> perform light work as defined in 20 CFR 404.1567(b) . . . except that [Sandoval]
> can occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds,
> occasionally balance, stoop, kneel, crouch and crawl.

*AR* at 22.  ALJ Gontis stated he reached these conclusions after considering all of Sandoval's

symptoms and the consistency of those symptoms with all record evidence as required by 20

C.F.R. §§ 404.1520c, 404.1529, and SSR 16-3p.  *AR* at 22.

ALJ Gontis supported his residual functional capacity findings with a thorough review of

record evidence.  He first acknowledged Sandoval's self-described symptoms and limitations,

including pain in his back and ankle; difficulty walking, standing, and exerting himself

generally; and "reported medication side effects of drowsiness."  *AR* at 22–23.  ALJ Gontis also

provided a short description of Sandoval's daily routine, which involved caring for his daughter,

---

[6] All SSRs can be accessed free of charge at https://www.ssa.gov/OP_Home/rulings/rulings.html.  Pin citations to
SSRs refer to headings in the SSR because the Administration does not paginate its rulings.

yard work, errands, and lying down "multiple times during the day." *AR* at 23.  ALJ Gontis then

detailed Sandoval's medical treatments since December 2016 and Dr. Sedas's opinion that

Sandoval could not perform even sedentary work.  *See id.*  ALJ Gontis concluded based on this

information that Sandoval's "medically determinable impairments could reasonably be expected

to cause [his] alleged symptoms" but that his "statements concerning the intensity, persistence

and limiting effects of these symptoms are not entirely consistent with the medical evidence and

other evidence in the record[.]" *AR* at 24.  ALJ Gontis then discussed other parts of Sandoval's

medical history which suggested that his medical conditions have been stable, manageable, and

improving in several respects.  *See AR* at 24–26.  This included descriptions of each medical

source's opinions and explanations for why ALJ Gontis found Drs. Coffman, Fleming, and

Bocian persuasive but did not give much weight to Dr. Sedas's opinions.  *AR* at 25–26.  For

example, ALJ Gontis acknowledged that Dr. Sedas said Sandoval would need an assistive device

to walk and contrasted this statement with contrary medical opinions and noted that no medical

records reflected Sandoval actually used an assistive device to walk.  *AR* at 24–26.  ALJ Gontis

thus concluded that, "[w]hile it is clear that [Sandoval] has severe physical impairments, the

totality of the evidence supports no more limitation that [sic] that in the residual functional

capacity." *AR* at 26.

ALJ Gontis found at steps four and five that Sandoval could not return to his past work

but that he could do other work and thus was not disabled.  *See AR* at 26–28.  ALJ Gontis

adopted the hearing testimony of vocational expert Diane Weber, who stated that the demands of

Sandoval's prior job as a vocational training instructor exceeded his residual functional capacity,

so he could not be found non-disabled at step four.  *AR* at 26.  Weber also stated, however, that at

least five occupations existed which Sandoval perform, and that 67,000 jobs existed in the

national economy within these professions which would provide substantially gainful work. *AR* at 27–28. ALJ Gontis stated that these occupations, as described in the Dictionary of Occupational Titles and by Weber, were consistent with Sandoval's residual functional capacity. *AR* at 28. Then, without further explanation, ALJ Gontis stated that "the claimant is capable of making a successful adjustment to other work *that exists in significant numbers* in the national economy." *Id.* (emphasis added). Sandoval was thus deemed not disabled since his alleged onset date and his applications for benefits were denied. *Id.*

## IV.   STANDARD OF REVIEW

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). The Commissioner's findings are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, requiring more than a scintilla but less than a preponderance. *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision is not based on substantial evidence if it is overwhelmed by other record evidence. *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014).

## V.   ISSUES PRESENTED

(a) Whether ALJ Gontis sufficiently considered Dr. Sedas's opinions?

(b) Whether ALJ Gontis sufficiently considered the effects of Sandoval's pain medication on his residual functional capacity?

(c) Whether ALJ Gontis sufficiently considered the effects of Sandoval's obesity on his residual functional capacity?

(d) Whether Sandoval's residual functional capacity was inconsistent with some of the occupations provided by Weber?

(e) Whether ALJ Gontis reversibly erred by failing to support his numerical significance finding at step five?

## VI. <u>ANALYSIS</u>

### a. <u>Dr. Sedas's Opinions</u>

#### i. *Parties' Arguments*

Sandoval first argues that ALJ Gontis erred by failing to properly consider Dr. Sedas's opinions on Sandoval's impairments. He points out that Dr. Sedas gave specific opinions on Sandoval's physical limitations which, if found true, would strongly support finding Sandoval disabled. [Doc. 26, p. 21]. Sandoval then asserts that ALJ Gontis's discussion about Dr. Sedas's opinion selectively highlighted evidence in the record which rebutted Dr. Sedas's positions, ignored evidence which would have supported them, and failed to consider some elements of Dr. Sedas's opinion. *Id.* at 21–22. Sandoval also implies that ALJ Gontis should have deferred to Dr. Sedas in accordance with the "treating physician rule" articulated in 20 C.F.R. § 404.1527. *Id.* at 19–20. These failures were, to Sandoval, legal error requiring reversal and remand.

The Commissioner argues that ALJ Gontis merely found Dr. Sedas's opinion unpersuasive based on other evidence and that he had the discretion to do so. [Doc. 34, pp. 7–11]. ALJ Gontis, she says, discussed Dr. Sedas's opinion as required and then explained that he found it unpersuasive because it was inconsistent with the other three medical opinions in the record and with some of the other evidence. *Id.* at 9–10. His decision to do so was supported by

substantial evidence, and Sandoval's argument to the contrary is merely asking this Court to reweigh evidence.  *Id.* at 11.  Additionally, the Commissioner points out that the rules under 20 C.F.R. § 404.1527 do not apply to this case.  *Id.* at 7 n.4.

### ii.  *Relevant Law*

The Administration must consider all evidence before it, including opinions from medical sources, to determine whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(3).  Medical opinions are not given deference based on their source but must be considered and weighed for their persuasiveness.[7]  *Id.* at § 404.1520c(a).  The primary factors considered by the Administration when weighing an opinion's persuasiveness are how well the opinion is supported by other evidence and its consistency with other evidence.  *Id.* at § 404.1520c(b)(2).  In their decisions granting or denying benefits, ALJs must articulate how persuasive they found each medical source opinion according to supportability and consistency to explain why some opinions were adopted and others were not.  *See id.* at § 404.1520c(b).  All fact findings by the ALJ are conclusive if supported by more than a scintilla of evidence.  42 U.S.C. 405(g); *Lax*, 489 F.3d at 1084.

### iii.  *Application*

ALJ Gontis satisfied the consideration and articulation requirements for medical source opinions and supported his findings with substantial evidence, so the Court cannot reverse on

---

[7] Sandoval argues that the Court should apply the "treating physician rule" as articulated in *Broadbent v. Harris*, 693 F.2d 407, 412 (10th Cir. 1983) and ignore the no-deference rules in 20 C.F.R. § 404.1520c.  [Doc. 26, pp. 19–20].  As he puts it, the Administration "cannot, by regulatory fiat, undo established Court precedent[.]"  [Doc. 26, p. 20].  The argument is unpersuasive for two reasons.  First, Sandoval cites no law to suggest that the Administration cannot, through typical rulemaking, create new regulations which effectively set aside judicially made rules.  Second, the Supreme Court has held that prior judicial construction of a statute forecloses the agency from interpreting the statute differently only "if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion."  *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005).  This Court has thus rejected an identical argument before.  *See Manzanares v. Kijakazi*, 2022 WL 4129411 at *4 (D.N.M. Sept. 12, 2022) (slip op.) (unpublished).  Sandoval gives the Court no reason to change course now.

this ground.  ALJ Gontis's discussion of the evidence plainly shows he considered Dr. Sedas's

opinion.  *See AR* at 23–26.  He accurately presented Dr. Sedas's opinion that Sandoval's ability

to work is so limited that he can perform neither his past relevant work nor any other occupation.

*AR* at 23.  ALJ Gontis then acknowledged that three other physicians disagreed with Dr. Sedas's

opinion and cited specific medical evidence which suggested that Dr. Sedas's proposed

limitations were not supported by the entire record.  *AR* at 24–26.  For example, in response to

Dr. Sedas's opinion that Sandoval would need a cane or other assistive device to walk, ALJ

Gontis pointed out that Sandoval was never observed by any medical provider using or in need

of an assistive device and that Sandoval's own daily routine involving yard work, errands, and

chores suggested he did not need an assistive device.  *AR* at 25.  ALJ Gontis also addressed the

opinions of each medical source individually and explained why he found that Drs. Coffman,

Fleming, and Bocian provided opinions more consistent with the record than Dr. Sedas and that

he was thus persuaded by their opinions.  *AR* at 25–26.  By addressing each medical source and

citing specific evidence which he believed showed the supportability and consistency of those

sources' opinions with the record, ALJ Gontis satisfied the requirements of 20 C.F.R.

§§ 404.1520 and 404.1520c and supported his findings with more than a scintilla of evidence.

Sandoval argues that ALJ Gontis erred by giving medical records showing "normal

findings" greater weight than those which favored finding Sandoval disabled.  [Doc. 23, pp. 21–

22].  The argument does not hold water.  It may be true that the record contains both evidence

which could reasonably support finding Sandoval disabled and evidence which shows "normal

findings."  Even so, this means that the record contains inconsistent or conflicting evidence and

the ALJ must "consider the relevant evidence and see if [h]e can determine whether [the

claimant is] disabled based on the evidence [h]e ha[s]."  20 C.F.R. § 404.1520b(b)(1).  The

regulations do not say that the ALJ must resolve these inconsistencies by weighing favorable evidence more heavily; rather, the ALJ exercises his discretion to weigh the evidence and make a determination.  *See Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence") (quoting *Zoltanski v. Fed. Aviation Admin.*, 372 F.3d 1195, 1200 (10th Cir. 2004)) (quotation marks omitted).  That is what ALJ Gontis did, and this Court cannot reverse that decision.

  b.  <u>Medication Side-Effects</u>

    i.  *Parties' Arguments*

Sandoval argues next that ALJ Gontis did not sufficiently consider the effects of Sandoval's prescribed painkillers on his ability to work and that this also warrants remand. Sandoval stated during his hearing that he takes opioid pain medication three times per day and that, after each dose, he becomes drowsy for about an hour.  [Doc. 26, p. 23].  Vocational expert Weber testified during the hearing that, if Sandoval were off-task for more than forty-eight minutes each day, he would not be employable.  *Id.*  In Sandoval's view, ALJ Gontis was required to either incorporate limitations into his residual functional capacity findings to account for Sandoval's drowsiness or explain why no mental limitations related to Sandoval's medication side-effects were incorporated.  *Id.*  The Commissioner responds that this is another issue where the ALJ's decision not to incorporate such limitations was a matter of weighing evidence and that Sandoval again wants this Court to improperly reweigh evidence in his favor.  [Doc. 34, p. 11–12].

ii. *Relevant Law*

Claimants bear the burden to prove their residual functional capacity to the Administration when applying for disability benefits.  20 C.F.R. §§ 404.1512(a)(1), 404.1545(a)(3).  The requirement that the Administration must consider all evidence before it to determine the residual functional capacity extends to a claimant's statements about his subjective symptoms.  *See id.* at § 404.1520c(b); SSR 16-3p at *Consideration of Other Evidence*.  Although he must consider this evidence, the ALJ is still the sole authority who may weigh it and his findings are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g); *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016).  And even though he must consider all evidence, the ALJ is not required to address every piece of evidence in the record for his decision to be supported by substantial evidence.  *Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009).

iii. *Application*

ALJ Gontis satisfied the consideration requirements for this evidence and supported his findings with substantial evidence, so the Court cannot reverse on this ground either.  ALJ Gontis showed that he considered the side-effects of Sandoval's opioid use by discussing his non-severe opioid dependence and briefly recognizing that Sandoval described feeling drowsy after taking his pain medication.  *AR* at 21, 23.  As discussed above, ALJ Gontis also discussed Sandoval's daily activities and noted that Sandoval was alert, oriented, and showed no memory or concentration deficits during examinations.  *AR* at 21, 23–24.  These statements in ALJ Gontis's decision show that he subjectively considered but assigned little weight to the impairing effects of Sandoval's medication, as he had discretion to do.

Sandoval is correct that ALJ Gontis did not specifically explain why his residual functional capacity findings did not include limitations on Sandoval's ability to persist with and

concentrate on tasks.  *See* [Doc. 26, p. 23].  This was not error.  The only evidence Sandoval

produced to show that he might be limited in those capacities were his oxycodone prescription

and that he said, during his hearing, that his medication makes him drowsy.  *See AR* at 41–42,

315.  Sandoval's oxycodone prescription began in at least 2007 and continued through 2017, at

the same dose, as he worked for roughly ten years.  *See AR* at 315, 633.  Indeed, almost all the

records Sandoval cites in his argument on this point are records showing pre-disability date

prescriptions.  *See* [Doc. 26, p. 23] (citing *AR* at 407, 405, 403, 401, 399, 397, 396, 394, 392,

388–90, 327–31, 409, 386–87, 652–55).  Meanwhile, Sandoval's sole statement about

drowsiness cannot, on its own, prove he is disabled.  *See* SSR 16-3p at *The Two-Step Process*

("We will not find an individual disabled based on alleged symptoms alone").  Sandoval's

evidence on this point only narrowly suggested that he was mentally limited and other evidence

contradicted such a finding.  ALJ Gontis's decision not to incorporate mental limitations on

Sandoval's concentration and persistence was thus supported by substantial evidence and the

Court cannot reverse on this ground.

### c.  Obesity in the Residual Functional Capacity

#### i.  *Parties' Arguments*

Sandoval directs the Court to evidence that he, at times, weighed nearly three-hundred

and sixty pounds and that Dr. Sedas advised him that his negative symptoms are worsened by

obesity.  [Doc. 26, p. 23] (citing *AR* at 349).  He then argues that ALJ Gontis erred by merely

stating that "he consider[ed] Plaintiff's obesity in formulating the [residual functional capacity],"

but "never mention[ed] or consider[ed] that Plaintiff's long time treating physician says that his

weight is a large factor in the severity of his symptoms."  *Id.*  Kijakazi counters that ALJ Gontis

satisfied the consideration requirements by expressly acknowledging Sandoval's obesity and

supported his findings with substantial evidence from throughout the record.  [Doc. 34, p. 13].

She further argues that it was Sandoval's burden to establish his residual functional capacity and

he cites no evidence to suggest that his obesity called for additional or different limitations than

those imposed by ALJ Gontis's residual functional capacity findings.  *Id.*

### ii.   *Relevant Law*

As discussed above, the Administration must consider all the evidence claimants put

before it; this includes evidence of obesity and its effect on the claimant's ability to work.  20

C.F.R. § 404.1520(a)(3); SSR 19-2p at *How do we Consider Obesity in Assessing a Person's*

*RFC?*  When an ALJ says he considered the evidence, courts generally take him at his word.  *See*

*Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).  Further, ALJs are not required to

discuss every piece of evidence in the record so long as a reviewing court can follow their

reasoning.  *Wall*, 561 F.3d at 1067.

### iii.   *Application*

Sandoval's argument does not show that ALJ Gontis failed to consider obesity evidence

or erred in how he did so, so the Court cannot reverse on this ground.  Sandoval's sole argument

on this point is that ALJ Gontis did not expressly acknowledge "that Plaintiff's long time [sic]

treating physician says that his weight is a large factor in the severity of his symptoms."

[Doc. 26, p. 23].  But he does not explain what additional limitations his obesity calls for which

are not already in the residual functional capacity findings, nor does he cite rules or case law to

suggest that this kind of finding needs to be expressly discussed.  *See id.*  Meanwhile, binding

case law says that this Court should take ALJ Gontis at his word when he writes that he has

subjectively considered evidence (*see Hackett*, 395 F.3d at 1173) and his short-shrift treatment of

Sandoval's obesity does not obscure his overall reasoning, so it does not appear erroneous.  *See*

*Wall*, 561 F.3d at 1067.  Sandoval's obesity evidence argument thus is not proper grounds to reverse the decision below.

### d.  Inconsistencies Between Residual Functional Capacity and Other Work

#### i.  *Parties' Arguments*

According to Sandoval, ALJ Gontis erred because he relied on vocational expert Weber's testimony that Sandoval could perform some "light work" jobs even though "light work" usually calls for about six hours of standing or walking during the workday and ALJ Gontis's hypothetical residual functional capacity only permitted four hours of standing or walking. [Doc. 26, pp. 23–24].  The Commissioner argues in response that the jobs Weber provided, though classified as light work, did not actually contradict Sandoval's residual functional capacity so there was no error.  [Doc. 34, p. 16].

#### ii.  *Relevant Law*

At step five, the burden to prove disability shifts from the claimant, who has shown he cannot perform his past relevant work, to the Administration, which must identify other work the claimant can still perform despite his limitations.  20 C.F.R. § 404.1660(c).  The occupations identified at step five must encompass jobs which exist in "significant numbers" in the national or regional economy.  42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c)(2).  It is reversible error for the ALJ to rely upon any occupation at step five which is incompatible with the claimant's residual functional capacity, and he thus cannot perform, unless other occupations relied upon provide so many jobs that no reasonable fact finder could conclude there are not jobs in significant numbers in the economy for the claimant.  *See Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004).

Occupations conflict with a claimant's residual functional capacity when they require abilities or skill the claimant lacks.  For example, to perform the full range of light work occupations, a claimant must be able to stand or walk, off and on, for a total of six hours in an eight-hour workday.  SSR 83-10 at *Glossary, Exertional Level (Level of Exertion)* (defining "light work").  It is thus error for an ALJ to find that a claimant can perform a full range of light work if all available evidence shows that the claimant can stand or walk, off and on, for just four hours in an eight-hour workday.  *See* SSR 00-4p at *Evidence That Conflicts With SSA Policy*. However, the requirements of some light work occupations deviate in practice from the requirements of light work given in SSRs and the Dictionary of Occupational Titles.  *See Anders v. Berryhill*, 688 F. App'x 514, 519–20 (10th Cir. 2017) (unpublished).  Vocational experts can, based on their expertise, testify to whether an occupation categorized as light work can be performed by someone with a residual functional capacity that sits between the requirements for a full range of light work and a full range of sedentary work.  *See id.* at 520.  ALJs can rely on this testimony if the conflicts between the Dictionary of Occupational Titles job description and the claimant's residual functional capacity are sufficiently explained.  *See id.*

### iii.  *Application*

Sandoval does not show that ALJ Gontis erred because, to the degree that the light work occupations ALJ Gontis adopted were inconsistent with Sandoval's hypothetical residual functional capacity, those inconsistencies were accounted for and reconciled by Weber's testimony.  The Court thus cannot reverse on this ground.

During Sandoval's hearing, ALJ Gontis told Weber to assume a hypothetical residual functional capacity of an individual who

> can lift, carry, push, and pull no more than 20 pounds occasionally and 10 pounds frequently . . . would be limited to no more than six hours of sitting and four hours

of standing or walking in an eight-hour workday . . . [l]imited to occasional left foot
controls . . . occasional climbing of ramps and stairs, never climbing ladders, ropes,
or scaffolds, occasional balance, stoop, kneel, crouch, and crawl.

*AR* at 65.  ALJ Gontis described this as "a modified light set of light work[.]"  *Id.*[8]  Weber then

testified that someone with this residual functional capacity would be able to perform some light

work jobs and some sedentary jobs.  *AR* at 66.  The light work occupations were "office helper,"

described at Dictionary of Occupational Titles number 239.567-010; "ticket seller," occupational

title number 211.467-030; and "silver wrapper," occupational title number 318.687-018.  *AR* at

66–70.  For each of these occupations, Weber described the tasks involved – photocopying and

filing papers, handing out or taking tickets, and wrapping or rolling silverware, respectively –

and how those tasks are typically performed while standing but, in Weber's expert opinion, could

often be performed while sitting, thus reducing the standing and walking requirements common

to other light work occupations.  *AR* at 66–70.  These descriptions were consistent with the

language used in the Dictionary of Occupational Titles to describe each job and reconciled the

light work classification with a residual functional capacity between light and sedentary work.

Thus, ALJ Gontis's adoption of these occupations at step five was not erroneous.

Sandoval argues that ALJ Gontis "fails to meaningfully evaluate [Weber's] testimony

that, despite the [Dictionary of Occupational Titles] definition and [Administration] policy, the

light jobs identified by him do not require six hours of standing in an eight-hour workday."

[Doc. 26, p. 24].  The argument ignores Weber's explanations for the light work jobs he

suggested and assumes that a claimant who cannot perform *all* light work occupations must not

be able to perform *any* light work.  As discussed above, both Administration policy and Tenth

Circuit case law cut against this assumption.  *See* SSR 00-4p at *Reasonable Explanations for*

---

[8] It should be noted that the hypothetical residual functional capacity Weber considered was more limited than
Sandoval's actual residual functional capacity.  *See AR* at 22.

*Conflicts (or Apparent Conflicts) in Occupational Information* (explaining how ALJs may rely

on a vocational expert's testimony "to provide more specific information about jobs or

occupations than the [Dictionary of Occupational Titles]"); *Anders*, 688 F. App'x at 520 (finding

that an ALJ permissibly relied upon a vocational expert's education and experience to find that

the claimant could perform a some light work despite having a residual functional capacity

which permitted the claimant to perform less than a full range of light work).

   e. <u>"Significant Numbers" Findings</u>

     i. *Parties' Arguments*

  Finally, Sandoval argues that the Commissioner's decision must be reversed and

remanded based on the rules set forth in *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992).

Although ALJ Gontis found that the 67,000 jobs available to him within the occupations

recommended by vocational expert Weber constituted jobs in "significant numbers in the

national economy," Sandoval complains that ALJ Gontis did not explain why 67,000 jobs is a

significant number of jobs, nor did he expressly consider factors listed by the *Trimiar* court to

support this finding.  [Doc. 26, p. 24–25].  This was error which requires remand.  The

Commissioner, however, argues that ALJ Gontis implicitly considered several *Trimiar* factors;

that 67,000 jobs is enough to satisfy the "significant numbers" requirement as a matter of law

under several Tenth Circuit cases; and that some *Trimiar* factors did not need to be considered at

all.  [Doc. 34, pp. 17–19].

     ii. *Relevant Law*

  As discussed above, the Administration has the burden to show the claimant can perform

work other than his past relevant work at step five.  *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th

Cir. 1999).  Claimants are not disabled if work identified at step five exists in "significant

numbers" regionally or nationally.  *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(b).

Whether that work exists in significant numbers is a fact finding which must be supported by

substantial evidence.  *See Allen*, 357 F.3d at 1144.  Further, ALJs generally must support their

numerical significance finding by considering certain factors adopted by the Tenth Circuit.  *See*

*Trimiar*, 966 F.2d at 1330.  Those factors are the level of claimant's disability; the reliability of

the vocational expert's testimony; the distance claimant can travel to engage in the assigned

work; the isolated nature of the jobs; and the types and availability of such work.  *Id.* at 1330

(quoting *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988)).  Taken together, the Act's

requirement that findings be supported by substantial evidence and the explanatory requirements

articulated in the case law suggest that the ALJ must either cite specific and substantial evidence

to support finding that the number of jobs available to the claimant is "significant" or explain

why other evidence already discussed supports a finding of numerical significance.  Failure to do

either will be harmless error only if so many jobs exist in the regional or national economy that

no reasonable fact finder could find against numerical significance.  *See Allen*, 357 F.3d at 1145

(holding that failure to make a proper "significant numbers" finding can sometimes be harmless

error); *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (unpublished) (finding, where

152,000 jobs were available to the claimant nationally, that no "reasonable factfinder could have

determined that suitable jobs did not exist in significant numbers").

        iii.  *Application*

     ALJ Gontis did not support with substantial evidence, nor explain clearly, his finding that

67,000 jobs in the national economy constitutes work in "significant numbers."  Nor it this

number great enough to make the error harmless.  The Administration's decision thus must be

reversed and remanded for reconsideration of this issue.

Although ALJ Gontis supported his findings that Sandoval can perform the five occupations suggested by Weber, he cited no evidence and provided no discussion to support his numerical significance finding.  He stated only that "[b]ased on the testimony of the vocational expert . . . [and] considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  *AR* at 28.  The factors ALJ Gontis listed speak only to whether Sandoval can perform the five occupations listed.  They do not speak to the *Trimiar* factors or address whether 67,000 jobs in the national economy is enough to support a finding that Sandoval can perform jobs which exist in significant numbers.  ALJ Gontis's numerical significance finding thus is not supported by substantial evidence and cannot be accepted as conclusive.  Numerical significance "entails many fact-specific considerations requiring individualized evaluation" best "left to the ALJ's common sense," *Allen*, 357 F.3d at 1144, but the Court must be able to see that such common sense was actually exercised.  The Court remands so this evaluation can be made on the record.

The Court rejects the Commissioner's implicit harmless error argument.  The Commissioner cites three Tenth Circuit cases where ALJs' decisions have been affirmed even though the ALJs in those cases found that that an even smaller number of jobs in the national economy was numerically significant.  *See* [Doc. 34, pp. 17–18] (citing *Garcia v. Comm'r, S.S.A.*, 817 F. App'x 640 (10th Cir. 2020) (unpublished); *Botello v. Astrue*, 376 F. App'x 847 (10th Cir. 2010) (unpublished); *Lynn v. Colvin*, 637 F. App'x 495 (10th Cir. 2016) (unpublished)).  The cases are distinguishable.  The argument raised by the claimants and rejected by the court of appeals in each of those cases was that the ALJ was required to solely or primarily consider whether jobs existed in significant numbers in the regional, not national

economy.  *See Garcia*, 817 F. App'x at 649; *Botello*, 376 F. App'x at 850–51; *Lynn*, 637 F.

App'x at 499 ("Lynn's argument erroneously focuses solely on the number of available regional

jobs").  None of these cases stand for the proposition that the number of jobs identified in them

would have been numerically significant to any reasonable factfinder.  Further, the issue here is

not whether or to what degree ALJ Gontis considered regional jobs, but whether he grounded his

numerical significance finding in any evidence or reasoning at all.  This Court cannot identify

any such reasoning in the Commissioner's final decision, and the number of jobs identified is far

below the 152,000 found by the Tenth Circuit to satisfy the harmless error standard in *Stokes*,

274 F. App'x at 684, so this case must be remanded.

## VII.    <u>CONCLUSION AND ORDER</u>

Wherefore, **IT IS THEREFORE ORDERED** that Plaintiff Florencio Sandoval, Jr.'s

Motion to Reverse and/or Remand, [Doc. 26], is **GRANTED** and the Commissioner's Final

Decision in this case is **REVERSED.**

_____
Jerry H. Ritter
U.S. Magistrate Judge
Presiding by Consent